PEOPLE v ROHRER

Docket No. 91806. Submitted November 15, 1988, at Lansing. Decided
     February 21, 1989.

     Richard Robert Rohrer was found guilty of third-degree criminal
     sexual conduct following a jury trial in Ingham Circuit Court,
     Michael G. Harrison, J. Defendant moved for a new trial,
     claiming that a new trial is warranted because members of the
     jury had violated the court's instruction not to discuss the case
     prior to the close of proofs and one juror failed to disclose at
     voir dire, but discussed during deliberations, his acquaintance
     with two women who had been raped. The court denied the
     motion. Defendant appealed.

          The Court of Appeals *held:*

          1. A violation by members of a jury of a trial court's instruc-
     tion not to discuss the case among themselves prior to the close
     of proofs, by itself and without a showing of prejudice to the
     defendant, does not constitute a ground for a new trial. Here,
     since no prejudice to defendant was shown, the trial court
     properly denied the motion for a new trial.

          2. The grant or denial of a motion for a new trial on the basis
     of jury bias is a matter within the trial court's discretion and
     will not be reversed on appeal absent an abuse of discretion.
     The trial court in this case did not abuse its discretion in
     rejecting defendant's claim that he was denied a fair trial when
     a juror failed to disclose at voir dire that two of his friends had
     been victims of rape. Defendant failed to demonstrate any
     prejudice resulting from the alleged bias.

          Affirmed.

1. CRIMINAL LAW — JURY TRIAL — JURY DISCUSSION OF CASE — NEW
     TRIAL.

     Where members of a jury hearing a criminal case discuss the case
     among themselves prior to the close of proofs in violation of the
     trial court's instruction not to do so, such discussion, by itself

REFERENCES

Am Jur 2d, New Trial §§ 76 *et seq.*; Trial § 994.
See the Index to Annotations under Jury and Jury Trial; New
     Trial.

and without a showing of prejudice to the defendant, does not constitute a ground for a new trial.

2. CRIMINAL LAW — NEW TRIAL — JURY BIAS — APPEAL.

The grant or denial of a motion for a new trial on the basis of jury bias is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Donald E. Martin,* Prosecuting Attorney, *Robert B. Ebersole,* Chief Appellate Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*), for defendant on appeal.

Before: SHEPHERD, P.J., and GRIBBS and G. S. ALLEN,* JJ.

G. S. ALLEN, J. We are asked to decide whether discussions by the jury held prior to the close of proofs and in violation of instructions by the trial court not to hold such discussions constitute grounds for a new trial. The question raised is of first impression in Michigan. Defendant was convicted by jury of one count of criminal sexual conduct in the third degree, MCL 750.520d; MSA 28.788(4). Sentenced on September 18, 1985, to two to fifteen years in prison, he appeals as of right contending that juror misconduct denied him his constitutional right to a fair trial. We affirm.

Based upon allegations by the complainant that she had been raped, defendant was arrested on June 21, 1984, and charged with six counts of first-degree criminal sexual conduct. At trial complainant testified that on June 16, 1984, defendant picked her up at her home at about 10:00 P.M. and

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

drove her to the Mayfield Bar in East Lansing; that about 1:30 A.M. they left the bar but instead of taking her home the defendant drove to an isolated area near Lake Lansing where he pulled out a knife and, after forcing her to undress, forced her to engage in acts of oral, vaginal and anal sex. Additionally, she testified that the defendant inserted a flashlight in her vagina. At about 5:00 A.M. defendant drove complainant home.

Defendant testified in his own behalf. He stated that he and complainant had dated from time to time since 1982 and had engaged in sexual relations. He testified that after leaving the Mayfield Bar he asked complainant to spend the night with him at his house, but that complainant had declined the offer and suggested going to a nearby park and having sexual relations. He explained that once there he and the complainant did have oral and vaginal sex but did not have anal sex. He admitting inserting a flashlight into complainant's vagina, but stated complainant did not object to this act and that when she complained of pain he withdrew the flashlight. However, he admitted that he did not seek complainant's consent prior to the act.

The jury returned a verdict of not guilty of five counts of first-degree criminal sexual conduct and guilty of one count of the lesser offense of third-degree criminal sexual conduct regarding the flashlight incident. Following sentencing, Judge Michael Harrison, the trial judge, received a letter from David Sucha, jury foreman in defendant's trial, complaining that one of the jurors, James R. Nuttall, had misrepresented himself at voir dire and that during jury deliberations Nuttall revealed to the other jurors that he was personally acquainted with three women who had been raped. It appears from the record that during voir dire

juror Nuttall informed the trial court that his niece had been molested approximately one week earlier but told the court that this would not preclude him from fairly and impartially deciding defendant's case. Defense counsel did not move to have Nuttall removed from the jury. Following impaneling of the jury, Judge Harrison instructed that the jurors should not discuss the case amongst themselves until after the conclusion of proofs.

On October 30, 1985, Judge Harrison held a hearing regarding the Sucha allegations. At this hearing Sucha repeated the statements made in his letter and further stated that Nuttall appeared to be more of an advocate of punishment for criminal sexual conduct than the other jurors. Sucha stated that eventually he challenged Nuttall with respect to his attitude, following which Nuttall had a complete change of attitude and became more receptive to discussing the issues based on the facts. Sucha also stated that despite the trial court's instruction the jurors routinely discussed the evidence in the case prior to the closing of proofs. Also, during deliberations, a copy of *Life* magazine with a cover story about date rape was found in the jury room.

Nuttall testified that at voir dire he did not mention the incident relating to two friends who had been raped as teenagers because the incident had occurred long ago and did not come to his mind during voir dire. He explained that he recalled the incident later on in jury deliberations and only brought the matter up to make a point. He denied having any bias against defendant and stated that he decided to find defendant guilty on the single count of third-degree criminal sexual conduct based on his assessment of the testimony.

In a detailed opinion delivered from the bench,

Judge Harrison denied defendant's motion for a new trial. The court stated that it found Mr. Nuttall to be unbiased in regard to his references to his friends' rape when they were teenagers, those rapes having occurred long before Nuttall became acquainted with his friends. As to the magazine, Judge Harrison stated it was a story of a woman who fabricated an incident of a rape and why she did it. The court stated that, after reading the article, if there were any prejudice at all, it would be prejudice to the prosecution. Regarding the verdict of guilty on the issue of the flashlight incident, the court concluded:

> He was asked whether he had had permission to do that, and his answer was that he had not really had permission. That is a rape. There is no question at all that that constitutes a rape. The mere fact that one has permission to essentially have intercourse does not give permission to use an object in the process. That is what the court recalls Mr. Rohrer's testimony to have been.

I

Defendant argues that his conviction must be reversed because the jury violated the express admonitions of the trial judge not to discuss the case until proofs were closed, the error being particularly harmful because the discussions concerned individual juror positions on relevant issues in the case. We find no Michigan case law directly on point. In all of the cases relied upon by the defendant the trial court either (1) failed to instruct the jury not to discuss the case, or (2) actually encouraged the jury to discuss the case during trial, *People v Hunter,* 370 Mich 262; 121 NW2d 442 (1963); *People v Blondia,* 69 Mich App

554; 245 NW2d 130 (1976), or (3) gave the impression that the jury could discuss the case during trial, *People v Feldman,* 87 Mich App 157; 274 NW2d 1 (1978). In the instant case the trial court expressly informed the jury it should not discuss the case until all proofs were in.

Thus, the issue presented is one of first impression. Is reversal required where a jury violates the trial court's express instruction not to discuss the case? Other jurisdictions have discussed the issue. See Anno: *Propriety & effect of jurors' discussion of evidence among themselves before final submission of criminal case,* 21 ALR4th 444. Review of that annotation discloses that, although there are cases to the contrary, generally, where a court has instructed the jury not to discuss the case during trial, a violation of the court's instruction per se is not a ground for a new trial. The proper remedy is for the court to review the alleged violation to determine whether or not the jurors' impartiality had been affected by the jurors' discussion. A new trial is justified only where the trial court finds the defendant to have been prejudiced.

In *People v Gilyard,* 124 Ill App 2d 95; 260 NE2d 364 (1970), cert den 402 US 911; 91 S Ct 1388; 28 L Ed 2d 652 (1971), the defendant's conviction of armed robbery was upheld where, in violation of the court's order, seven jurors discussed certain exhibits introduced in evidence. The court polled the jurors and found that their impartiality had not been affected. In *United States v Klee,* 494 F2d 394 (CA 9, 1974), an appeal from a verdict of guilty for wilful failure to file federal income tax returns was sustained even though eleven of fourteen jurors discussed the case during recess and nine jurors expressed premature opinions regarding the defendant's guilt. The court held that the test for reversal was whether or not

the misconduct had prejudiced the defendant to the extent that he was denied a fair trial.

Similarly, in *State v McCall,* 187 Conn 73; 444 A2d 896 (1982), defendant's motion for a new trial on grounds that jury deliberations had taken place prior to the close of evidence and that an alternate juror may have participated in the juror deliberations was denied. Noting that the test was whether or not defendant had been prejudiced to the extent he had not received a fair trial, the court found that the foreman's version of what had transpired did not indicate any juror had made up his mind. The court also noted that the trial court had also indicated that the improper jury discussions had not extended to the point that opinions had been reached.

Discussion by the jury prior to the conclusion of proofs in a case involving violation of an obscenity statute was held not to constitute prejudicial information or outside influence. *State v Frazier,* 683 SW2d 346 (Tenn Crim App, 1984). Finally, in *State v Young,* 701 SW2d 490 (Mo App, 1985), it was held that the trial court properly denied defendants' motion for a mistrial on grounds that two jurors had discussed one of the defendants' guilt prior to closing arguments. The trial court removed the two jurors who had discussed the case and received assurances from the remaining jurors that the incident would not influence their verdict. The trial court held that defendants had failed to show they were prejudiced.

Indeed, except for one case of ancient vintage, *Capps v State,* 109 Ark 193; 159 SW 193 (1913), cases where the trial judge has instructed or otherwise led the jury to believe they might discuss the trial prior to the close of proofs, *Winebrenner v United States,* 147 F2d 322 (CA 8, 1945); *State v*

*Washington,* 182 Conn 418; 438 A2d 1144 (1980); *State v McGuire,* 272 SC 547; 253 SE2d 103 (1979); *State v Gill,* 273 SC 190; 255 SE2d 455 (1979), or cases where, after conducting a hearing, the trial judge finds the jury discussions so egregious as to prejudice the defendant *People v Marrero,* 83 AD2d 565; 441 NYS2d 12 (1981); *State v Drake,* 31 NC App 187; 229 SE2d 51 (1976), we have found no decision in other jurisdictions where discussion by the jury prior to the close of proofs in violation of the trial court's instructions, by itself and without a showing of prejudice to the defendant, was held to be a ground for a new trial. The fact that the jury violated the express instructions of the court is not in and of itself a ground for reversal. Prejudice is not assumed; it must be shown.

Application of this principle of law to the case before us compels us to conclude that the trial court did not err in denying defendant's motion for a new trial. Clearly, the article in Life magazine prejudiced the complainant rather than the defendant herein. Clearly, to the extent that juror Nuttall's advocacy of punishing defendant is concerned, his efforts did not prejudice the defendant since defendant was found not guilty of all counts charged against him except the least serious count and as to that count defendant himself admitted the act. Further, most of the jurors' discussion prior to the close of proofs concerned the complainant's credibility rather than defendant's guilt. Finally, both jurors Sucha and Nuttall, who appeared to be the jurors most involved in the juror conversations,stated that the final verdict was appropriate and was in accordance with the evidence. As stated in *People v Sowders,* 164 Mich App 36, 47; 417 NW2d 78 (1987), quoting from *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960):

"It is well established that not every instance of misconduct in a juror will require a new trial. The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury or disqualify them [sic] from exercising the powers of reason and judgment. A new trial will not be granted for misconduct of the jury if no substantial harm was done thereby to the parties seeking a new trial, even though the misconduct is such as to merit rebuke from the trial court if brought to its notice."

II

Defendant next argues that the very presence of juror Nuttall denied him a fair trial since, had Nuttall revealed at voir dire his friendship with two individuals who had had "acquaintance rape" experiences, defendant would have exercised a peremptory challenge or challenge for cause. We disagree. At voir dire defendant responded truthfully to the question asked. He was asked whether any of his family had been involved in a similar incident. He responded that his young niece had been sexually molested only a week prior to trial but he felt he could nevertheless make a fair judgment based on the facts. Despite this revelation, defendant did not exercise a peremptory challenge or challenge for cause. The facts which Nuttall revealed in response to the question were clearly more prejudicial than the facts which he did not disclose at voir dire but recalled later when something during the trial caused him to recollect the incident.

Further, defendant has failed to show any prejudice. As described in Issue I, defendant was acquitted of five counts of criminal sexual conduct and

was only convicted of one count which was established by defendant's own testimony. There is no reason to believe or assume that defendant would have testified any differently had Nuttall not been on the jury. The decision to grant or deny a new trial on grounds of jury bias is a matter within the trial court's discretion. An appellate court reviews such decision "only for an abuse of that very broad discretion." *People v Sowders, supra; Shiner v Detroit,* 150 Mich App 420, 424; 387 NW2d 872 (1986), lv den 426 Mich 859 (1986). We find no abuse of the trial court's discretion.

Affirmed.